*Clennie Murphy, III, et al. v. Government Employees Insurance Company*, No. 55, September Term, 2025. Opinion by Gould, J.

**INSURANCE POLICY INTERPRETATION**

The Supreme Court of Maryland determined that the provisions of an insurance policy operate together to define the scope of coverage and liability, and the same term used within those provisions carries the same meaning and serves the same function, unless the policy indicates otherwise.

**INSURANCE POLICY INTERPRETATION – HOUSEHOLD EXCLUSION PROVISION**

The Supreme Court of Maryland determined that the term "bodily injury" used in an automobile insurance policy does not describe the scope or type of damages available to a claimant, but rather serves as the triggering event for the insurance company's legal obligation to pay damages. If that same triggering event is carried over using the term "bodily injury" to limit the liability and household exclusion provisions, and if the triggering event is the death of an insured who would have been subject to the household exclusion, the household exclusion applies according to its terms to limit the recovery of adult children of the deceased who do not reside in the household and make claims under the wrongful death statute, as defined in MD. CODE ANN., CTS. & JUD. PROC. § 3-904(e) (1974, 2020 Repl. Vol.).

IN THE SUPREME COURT

OF MARYLAND

No. 55

September Term, 2025

_____

CLENNIE MURPHY, III, et al.

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Opinion by Gould, J.

_____

Filed: July 13, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This case requires us to interpret and apply the provision of an automobile insurance policy called the "household" exclusion. Here, the insureds under the policy were a married couple with four adult children. The question before us is whether that exclusion limits the coverage available to satisfy a wrongful death claim brought by the adult children, where the "bodily injury" on which their claim depends is the death of their father caused by the negligent driving of their mother. We hold that, under the plain language of the insurance policy, the household exclusion does apply, and we affirm the judgment of the Appellate Court of Maryland.

I

A

Barbara Alexander Murphy and Clennie Hughes Murphy, Jr., a married couple, insured their four automobiles through a Maryland Family Automobile Insurance Policy (the "Policy") issued by Respondent Government Employees Insurance Company ("GEICO"). The Policy's liability limits for "bodily injury" were $300,000 per person and $300,000 per occurrence. On August 19, 2021, Barbara Murphy was driving one of the insured vehicles, with Clennie Murphy, Jr. as a passenger, when her negligent driving caused an accident that resulted in her husband's death.

Petitioners, the Murphys' four adult children (the "Adult Children"),[1] made claims on the Policy against their mother under Maryland's wrongful death statute, codified at

---

[1] The Murphys' four adult children are Clennie Murphy, III, Kimberly Murphy, Rhonda Lindo, and Rosalyn Murphy-Jenkins. None resided in their parents' household at the time of the incident.

MD. CODE ANN., CTS. & JUD. PROC. ("CJP") § 3-901 *et seq.* (1974, 2020 Repl. Vol.). In response, GEICO invoked the household exclusion in the Policy, which states that coverage does not apply to "***bodily injury*** to any ***insured***, or to any ***relative*** of an ***insured*** residing in his household in excess of the financial responsibility limits required by Maryland law[,]" which is $30,000.[2] Thus, GEICO took the position that the amount of insurance available to cover the Adult Children's claims was $30,000, not the per-person liability limit of $300,000, on the grounds that the Adult Children sought damages because of the "bodily injury" (the death) of Clennie Murphy, Jr., an insured.

B

On April 6, 2022, the Adult Children sued GEICO in the Circuit Court for Montgomery County, seeking a declaratory judgment that the coverage available under the Policy for their wrongful death claims was not subject to the household exclusion. They maintained that their claims were separate and distinct from any claim of their father (or his estate) and that the $300,000 per-person limit therefore applied.

The circuit court entered a declaratory judgment in GEICO's favor. Guided primarily by *Costello v. Nationwide Mutual Insurance Co.*, 143 Md. App. 403 (2002), as well as *Daley v. United Services Automobile Ass'n*, 312 Md. 550 (1988) and *Nationwide Mutual Insurance Co. v. Scherr*, 101 Md. App. 690 (1994), the court determined that the Adult Children's claims were "derivative and ar[o]se from the bodily injury of their

_____

[2] This amount is the "statutory minimum coverage prescribed" by Maryland law. *See Costello v. Nationwide Mut. Ins. Co.*, 143 Md. App. 403, 407 (2002); MD. CODE ANN., TRANSP. § 17-103(b)(1) (2020).

2

father[.]" The court further concluded that because the household exclusion would have applied to any claim their father could have made, it also applied to the Adult Children's claims. As a result, the court found that GEICO's liability to the Adult Children was limited to $30,000.

C

In an unreported opinion, the Appellate Court of Maryland affirmed. *Murphy v. Gov't Emps. Ins. Co.*, No. 392, Sept. Term 2023, 2025 WL 2962501 (Md. Ct. App. Oct. 21, 2025). Relying on the plain language of the Policy, and applying *Costello*, *Daley*, *Scherr*, and *Valliere v. Allstate Insurance Co.*, 324 Md. 139 (1991), the court held that the household exclusion limited GEICO's payment obligation to $30,000. *Murphy*, 2025 WL 2962501, at *4-5, *7, *11. Drawing on *Costello*, the Appellate Court explained that:

> regardless of whether the Murphy children's wrongful death claim is characterized as derivative or independent, the claim asks that Barbara pay damages for losses that only occurred *because* of the bodily injury to an insured, and the household exclusion limits GEICO's obligation to pay "any claim or suit for damage" that is based upon "bodily injury to any insured."

*Id.* at *10. The court further noted that after *Costello* was decided, the General Assembly required that optional coverage be made available to remove a household exclusion, but that the Murphys did not purchase the extra coverage.[3] *Id.* at *10-11.

---

[3] Effective October 1, 2004, two years after *Costello*, the General Assembly enacted section 19-504.1 of the Insurance Article that provides, in relevant part:

> An insurer shall offer to the first named insured under a policy or binder of private passenger motor vehicle liability insurance liability coverage for claims made by a family member in the same amount as the liability coverage for claims made by a nonfamily member under the policy or binder.

We granted the Adult Children's petition for a writ of certiorari. *Murphy v. Gov't Emps. Ins. Co.*, 493 Md. 63 (2026). The petition presents two questions, which we have consolidated into one:

> Does the household exclusion in the Policy apply to the Adult Children's claim under the wrongful death statute?

Our answer is yes.

## II

### A

We interpret insurance policies the same way we interpret other contracts. *See Tapestry, Inc. v. Factory Mut. Ins. Co.*, 482 Md. 223, 239 (2022); *Connors v. Gov't Emps. Ins. Co.*, 442 Md. 466, 480 (2015). We read an insurance policy as a whole, focusing on its character and purpose. *Tapestry*, 482 Md. at 239. Ordinarily, in construing contracts, we give words their "customary and normal meaning," but that rule yields when the insurance policy supplies its own definition, in which case the "policy definition controls." *Valliere*, 324 Md. at 142 (citation modified). Unless the language is ambiguous—that is, susceptible to more than one reasonable interpretation—we give it the meaning a reasonable person in the parties' position would have understood it to have, and we enforce it as written. *Tapestry*, 482 Md. at 239-40. If the insurance policy is ambiguous, we construe it against the drafter, that is, the insurance company. *Id.*

---

MD. CODE ANN., INS. § 19-504.1(b) (2004 Supp.).

4

The interpretation of an unambiguous contract is an issue of law that we review without deference. *Adventist Healthcare, Inc. v. Behram*, 488 Md. 410, 432 (2024) (citing *Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 7 (2014)).

B

The Adult Children argue that the definition of "bodily injury" in the Policy is ambiguous and "should be read to cover independent claims contemplated by Maryland's wrongful death act, which includes 'mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, training, education, or guidance.'" They argue that "bodily injury" does not "necessarily require 'physical' injury" and refer us to *Beynon v. Montgomery Cablevision Ltd. P'ship*, 351 Md. 460, 503 (1998) (citation omitted), for the proposition that "damages for mental and emotional disturbances are recoverable when there has been no physical impact and injury, provided that 'the mental state for which recovery is sought is capable of objective determination.'" And because they are neither insureds nor relatives who live in the same household as the insured, they argue that the household exclusion does not apply to their wrongful death claims.

The Adult Children's argument rests on a misunderstanding of the function served by the defined term "bodily injury" in the relevant provisions of the Policy. A typical policy provides a grant of insurance coverage "in the first part of the policy only to narrow that broad coverage by exclusions, conditions, etc. later in the policy[.]" *Liberty Mut. Ins. Co. v. State Farm Ins. Co.*, 262 Md. 305, 312 (1971). Here, the Policy grants coverage under the heading "Losses We Will Pay," imposes limits on GEICO's liability on the

5

Declarations page and in the clause entitled "Limits of Liability," and provides exclusions from such coverage in the "Exclusions" section. Each of those provisions uses the defined term "bodily injury." Because those provisions operate together to define the scope of GEICO's coverage and liability, we presume that the term carries the same meaning and serves the same function in each provision, unless the Policy indicates otherwise, which, here, it does not. *See Walker v. Dep't of Hum. Res.*, 379 Md. 407, 421 (2004) ("We also attempt to construe contracts as a whole, to interpret their separate provisions harmoniously, so that, if possible, all of them may be given effect.").

As we explain in more detail below, the term "bodily injury" does not describe the scope or type of damages available to a claimant, but rather serves as the triggering event for GEICO's legal obligation to pay damages in the first place under the "Losses We Will Pay" clause. That same triggering event is carried over, again using the term "bodily injury," to the "Limits of Liability" and household exclusion provisions. Because the "bodily injury" that triggers coverage is the death of Mr. Murphy, an insured, the household exclusion applies according to its terms.

1

We begin with the clause in the Policy that establishes GEICO's coverage obligation, because without it, none of the liability limitations or exclusions come into play. In Section I, under "Losses We Will Pay," the Policy provides that GEICO:

> will pay damages which an ***insured*** becomes legally obligated to pay because of:
> **1.**      ***Bodily injury***, sustained by a person, and
> **2.**      Damage to or destruction of property,

arising out of the ownership, maintenance or use of the ***owned auto*** or ***non-owned auto***. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

The Policy defines the term "***Bodily injury***" as "bodily injury to a person, including resulting sickness, disease or death."

Based on the plain language and grammatical structure of this provision, GEICO's coverage obligation hinges on two conditions. *First*, the insured must become "legally obligated" to pay "damages" to someone. But notice that this provision does not mention the type of "damages" that the insured must be obligated to pay. Nor does it say who would be entitled to claim such damages under the Policy. That's because the scope of such damages and the persons entitled to seek them are supplied or defined by the substantive law applicable to the claim made.

*Second*, the insured's legal obligation to pay damages must be "because of" something that happened—a triggering event. That triggering event is defined as a "*[b]odily injury*, sustained by a person" arising out of an insured's use of the "***owned auto or non-owned auto***." The defined term "bodily injury," therefore, merely identifies the event that gives rise to the insured's legal obligation to pay damages; it does not define the scope of such damages or describe the types of claims that arise out of the event.

A simple hypothetical illustrates how the "Losses We Will Pay" clause operates. Assume that Mr. Murphy was injured but survived the accident, and that his injuries caused him pain and suffering, lost income, and medical expenses. The triggering event under the Policy would be his "bodily injury" due to Mrs. Murphy's negligent driving. Mrs. Murphy's legal obligation to pay damages to Mr. Murphy—including both the elements of

7

the claim and the types of recoverable damages—would be supplied by Maryland's negligence law, which permits recovery for pain and suffering, lost income, and medical expenses. *See Smith v. Borello*, 370 Md. 227, 233 (2002). Thus, because the insured, Mrs. Murphy, would be legally obligated to pay such damages to Mr. Murphy under Maryland's negligence law, GEICO would be obligated to pay these damages under the Policy, subject to the Policy's liability limits and applicable exclusions, including the household exclusion.

The Adult Children, however, were not involved in the accident and thus suffered no injuries as a direct and proximate result of Mrs. Murphy's negligent driving. In our hypothetical, therefore, they would have no claim under Maryland law against Mrs. Murphy regardless of the severity of Mr. Murphy's injuries, and no basis to impose on their mother a legal obligation to pay them damages of any kind.

But Mr. Murphy did die, and so, Maryland's wrongful death statute furnishes the Adult Children with a cause of action against Mrs. Murphy. *See* CJP § 3-904. However, this statute does not provide the Adult Children with a cause of action for injuries they suffered as a direct and proximate result of Mrs. Murphy's negligent driving (there were none), but rather for injuries they themselves suffered from their father's death. *See Spangler v. McQuitty*, 449 Md. 33, 53 (2016) ("The wrongful death statute allows the decedent's beneficiaries or relatives to recover damages for loss of support or other benefits that would have been provided, had the decedent not died as a result of another's negligence."); *Eagan v. Calhoun*, 347 Md. 72, 82 (1997) (the wrongful death statute permits the beneficiary "to recover damages for his or her own loss accruing from the decedent's death" (citation omitted)); *Daley*, 312 Md. at 559 (distinguishing between

8

injuries proximately caused by the negligent act and damages resulting from the death caused by that act).

The wrongful death statute permits "[a]n action . . . against a person whose wrongful act causes the death of another." CJP § 3-902(a). Here, the "wrongful act" is Mrs. Murphy's negligent driving, *see* CJP § 3-901(e), and the "death of another" refers to Mr. Murphy's death. The persons entitled to assert such a claim—the beneficiaries of a wrongful death claim—are defined in CJP § 3-904(a)(1) to include "the wife, husband, parent, and child of the deceased person." And in CJP § 3-904(e), the statute defines the nature and scope of such damages which, in addition to pecuniary losses, include "mental anguish, emotional pain and suffering, loss of society, companionship" and the like, called "solatium damages." *See Daley*, 312 Md. at 553 n.2. These match the categories of damages that the Adult Children claim GEICO is obligated to pay them under the Policy.

The wrongful death statute neatly aligns with the text and structure of the "Losses We Will Pay" clause of the Policy. *First*, it supplies Mrs. Murphy's legal obligation to pay damages contemplated by the "Losses We Will Pay" clause. *Second*, it identifies the class of persons—which includes the Adult Children—entitled to recover those damages. *Third*, it provides the triggering event: Mr. Murphy's death, caused by the negligent driving (a wrongful act under the statute) of a covered automobile by the insured, Mrs. Murphy. And *fourth*, it defines the scope of damages to which the Adult Children are legally entitled "because of" the death of their father—not the negligent driving of their mother—to include the very solatium damages the Adult Children are claiming here. *See Spangler*, 449 Md. at 64 (explaining that the purpose of the wrongful death statute is "to compensate

9

eligible beneficiaries" for losses "caused by the death of the decedent resulting from the tortious conduct of others"). In sum, the solatium damages available to the Adult Children under the wrongful death statute are, in the words of the Policy, the "damages which an insured becomes legally obligated to pay," but not part of the event—the "bodily injury" to Mr. Murphy—which triggered Mrs. Murphy's obligation to pay such damages.

2

This interpretation of the term "bodily injury" and the function it serves in the "Losses We Will Pay" provision likewise applies to the provision limiting GEICO's liability under the Policy. The Policy's coverage limits for "bodily injury" liability are, as set forth on the Declarations page, $300,000 per person and $300,000 per occurrence. Under the heading "Limits of Liability," the Policy provides:

> Regardless of the number of autos or trailers to which this policy applies:
>
> 1.      The limit of Bodily Injury Liability stated in the Declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of ***bodily injury*** sustained by one person as the result of one occurrence.
> 2.      The limit of Bodily Injury Liability stated in the Declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of ***bodily injury*** sustained by two or more persons as the result of any one occurrence.

In this provision, the "damages" being limited are the same "damages"—including loss of services—that the insured became obligated to pay under the "Losses We Will Pay" provision. And the phrase "because of bodily injury" serves the same event-triggering function as it did in "Losses We Will Pay": The damages the insured is obligated to pay,

10

including the loss of services, must be "because of" a "bodily injury" (here, the death of Mr. Murphy)—sustained by one or more persons.

3

Which brings us to the household exclusion:

Section I does not apply:

1.     To bodily injury to any *insured*, or to any *relative* of an *insured* residing in his household in excess of the financial responsibility limits required by Maryland law. This exclusion does not apply if the first named insured has purchased Supplemental Resident Relative Liability coverage.

Because GEICO's duty to pay under "Losses We Will Pay" is premised on the "bodily injury" that is the death of Mr. Murphy, it must be that same "bodily injury" to which the exclusion refers. Thus, because Mr. Murphy was an insured, his "bodily injury" falls within the household exclusion. And because the Murphys did not purchase the optional Supplemental Resident Relative Liability coverage that would have removed it, the exclusion therefore applies, limiting GEICO's obligation to pay the Adult Children's wrongful death damages to $30,000.

C

Our reading is supported by a line of Maryland cases discussed in the parties' briefs and relied upon by the circuit court and the Appellate Court.

The first is *Daley v. United Services Automobile Ass'n*, 312 Md. 550. There, a child was killed by a negligent driver, and her parents brought wrongful death and survival claims under a policy that, like this one, defined "bodily injury" to include "death resulting therefrom" and promised to pay "all sums which the insured shall become legally obligated

11

to pay as damages because of" that injury "sustained by any person." *Id.* at 552. The parents argued that their own injuries from losing their child were essentially a second "bodily injury," separate from their child's, so that the policy's higher per-occurrence limit applied. *Id.* at 553. We rejected that argument. We noted that the parents did not contend that the negligent driver breached a duty to them "which proximately caused them emotional distress and resulting physical injuries." *Id.* at 559. Because the parents "suffered no separate and distinct bodily injuries of their own[,]" we concluded that their damages resulted from the "bodily injury" of one person—their child—and thus, their claim against the insurer was subject to the single per-person limit. *Id.* at 560.

That is the same distinction at play here. The parents' claim in *Daley* did not become a separate "bodily injury" just because they, rather than their child, suffered the loss; the child's injury remained the sole triggering event, and the parents' damages flowed from it. So too here. The Adult Children's solatium damages are recoverable under the Policy because of the single "bodily injury"—the death of their father—that triggered Mrs. Murphy's legal obligation under the wrongful death statute to pay such damages to them. Although *Daley* construed a policy's per-person limit rather than a household exclusion, that difference does not matter, because both provisions turn on the meaning and function of the same defined term, "bodily injury."

The next case is *Valliere v. Allstate Insurance Co.*, where a widow and her son pursued wrongful death and survival claims against the driver whose negligence caused the death of her husband (the son's father). 324 Md. at 140-41. The driver's insurance policy, issued by Allstate, was unusual because it defined "bodily injury" to include "loss

12

of services." *Id.* at 141. Thus, the widow's and son's respective "loss of services" were separate "bodily injuries," from the death, and therefore, their claims were subject to the per-occurrence policy limit, not the per-person policy limit. *Id.* at 147. Our holding departed from the ordinary rule that "loss of services" is not a separate "bodily injury within the meaning of usual insurance policy language" *only* because Allstate included "loss of services" within the definition of "bodily injury." *Id.* at 143. Allstate, in short, was liable because of its own unusual definition of "bodily injury." *Id.* at 147.

Here, in contrast, GEICO used what we described in *Valliere* as the "usual" or "normal" definition of "bodily injury," *id.* at 143, and the "Limits of Liability" clause places "loss of services" among the types of recoverable damages by limiting "all damages, including damages for care and loss of services, because of bodily injury sustained by one person." Through its emphasis on the precise language used in Allstate's policy—specifically the unusual language that swept "loss of services" into the definition of "bodily injury"—*Valliere* supports our interpretation of the Policy here, which includes no such language.

*Nationwide Mutual Insurance Co. v. Scherr*, 101 Md. App. 690, applied that distinction to facts similar to those here. A husband and his two minor children sought to recover for the loss of his wife (the children's mother), who was killed by a negligent driver insured by Nationwide. *Id.* at 693. The Appellate Court held that their claims were subject to the single per-person limit, because the phrase "loss of services" in the Nationwide policy modified the damages the insurer would pay, not the term "bodily injury," as was the case in *Valliere*. *Id.* at 696, 698. The court held that the wife was "the only person who

suffered bodily injury," so "the total claim [was] subject to the per person limit of $100,000." *Id.* at 696. Here, as in *Scherr*, "loss of services" is included in the definition of "bodily injury," and thus the same conclusion follows: the only person who suffered a "bodily injury" under the "Losses We Will Pay" clause was Mr. Murphy, not the Adult Children.

That leaves *Costello v. Nationwide Mutual Insurance Co.*, 143 Md. App. 403, which applied these principles to the household exclusion on facts indistinguishable from those here. There, the adult children asserted survival and wrongful death claims against their father, whose negligent driving caused his wife's (the claimants' mother's) death. *Id.* at 405-06. Their parents were insured under a policy issued by Nationwide. *Id.* at 405-06. The policy's household exclusion—like GEICO's—excluded coverage for "bodily injury to any insured or any member of an insured's family residing in the insured's household." *Id.* at 409 (citation modified). The Appellate Court held the children's recovery was limited to the statutory minimum for the same reason we have already given here: their "claim to coverage depends upon the existence of their mother's bodily injury to trigger the policy's coverage[,]" and were their emotional injuries "not linked to their mother's 'bodily injury,' those injuries clearly would be non-compensable under the policy[.]" *Id.* at 414. And because the damages were due to a "bodily injury," which the policy defined to include death to a household member, the same exclusion that would have limited the deceased's recovery also limited her children's. *Id.*

The Adult Children attempt to distinguish *Costello*. They focus on a passage in which the court, after observing that wrongful death claims are derivative of the underlying

14

"bodily injury," reasoned that "since" the Nationwide policy expressly limited recovery for "all derivative claims" arising out of one person's "bodily injury," "it follows" that the children's wrongful death damages were included within the mother's "bodily injury" and limited by the household exclusion. *Id.* at 417. The GEICO Policy contains no comparable "derivative claims" language, and from that absence, the Adult Children draw the inverse inference: if such language is what made the exclusion's application "follow" in *Costello*, then its absence here means the exclusion does not apply.

This attempt to distinguish *Costello* fails for two reasons. *First*, our interpretation hinges on the language of the GEICO Policy, not on language found in some other insurer's policy. The "Losses We Will Pay" clause obligates GEICO to pay damages "because of" a "bodily injury"; the only such injury is the death of Mr. Murphy, an insured, and the household exclusion excludes coverage above $30,000. Whether a different policy elsewhere limited "derivative claims" does not inform the meaning of the Policy before us.

*Second*, the Adult Children misread *Costello*. The court did not rest its holding on the derivative-claims clause; it grounded its holding in *Daley*, *Scherr*, and the plain terms of the insurance policy, concluding that the children's claim "is not a bodily injury independent of the death of their mother" and that their coverage "depends upon the existence of their mother's bodily injury[.]" *Costello*, 143 Md. App. at 411-14. The court's analysis of the "derivative" language in the policy merely confirmed its interpretation of the policy and its application of *Daley* and *Scherr*. Just as in *Costello*, where the children's damages existed because of their mother's "bodily injury" and their claim to coverage

depended on that injury, so too here: The Adult Children's entitlement to solatium damages exists because of the "bodily injury" to their father.

Thus, we decline the Adult Children's invitation to overrule *Costello*. They do not contend that *Daley*, *Valliere*, or *Scherr* was wrongly decided—indeed, they argue that *Costello* may be set aside without disturbing those cases. As we see it, *Costello* faithfully applies those decisions to the household exclusion at issue and thus we perceive no reason to overrule it.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**